**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**TOWER NATIONAL INSURANCE**                                    **CIVIL ACTION**
**COMPANY**

**VERSUS**                                                                    **NO. 14-1634**

**DIXIE MOTORS d/b/a DIXIE**                            **SECTION "B"(2)**
**RV SUPERSTORES, ET AL.**


<u>**ORDER AND REASONS**</u>


This action arises out of an insurance coverage dispute.
Tower National Insurance Company ("Tower National") issued to
Dixie Motors LLC d/b/a Dixie RV Superstores ("Dixie Motors") an
insurance policy, effective from May 12, 2013 to May 12, 2014.
("Policy").[1] On June 17, 2014, a petition for monetary damages
was filed in state court by Thomas A. Anzalone for injuries
sustained on or about August 11, 2013 while on a sailing
vacation in the Bahamas, when Gregory A. Lala ("Lala"), the
owner of Dixie Motors negligently caused a golf cart to tip
over.[2] ("underlying lawsuit"). The petition asserts claims
against Tower National and alleges that the company had in full
force and effect a policy of liability insurance, insuring Dixie

---

[1] Rec. Doc. No. 1 at 3.
[2] Rec. Doc. No. 1 at 3.

Motors and Lala for the types and kinds of liability asserted in the petition.[3]

Tower National filed the instant diversity action seeking declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that there is no coverage under the Policy for either Dixie or Lala resulting from Lala's operation of a golf cart in the Bahamas. Tower National moves the Court for summary judgment that the liability insurer owes no duty to defend or indemnify Dixie Motors or its employee (Lala), in connection with the underlying lawsuit.[4] Defendants, Dixie Motors and Lala, have filed a response, arguing in part, that Tower National's declaratory judgment action is not fully ripe as the issue of the defendants' liability in the underlying state court lawsuit has not been resolved. Defendants also move the Court to dismiss or stay this action on the grounds of abstention, due to "parallel state proceedings."

The questions presented are several. First, the Court must determine whether the claims in this declaratory judgment action are justiciable. Second, the Court must determine how to exercise its broad discretion to decide, stay, or dismiss this action. Finally, if the Court finds that any claims are justiciable, that it has authority to grant declaratory relief,

[3] Rec. Doc. No. 1 at 3.
[4] Rec. Doc. No. 1 at 4.

the Court must then determine whether under Louisiana law, Tower National is entitled to summary judgment on the duty to defend and duty to indemnify claims.

> I.   **LAW & ANALYSIS**
>
>> a. **Justiciability**

Tower National seeks summary judgment in this declaratory judgment action that it has no duty to defend or indemnify Dixie Motors and Lala in the underlying lawsuit under the terms of the Policy. A federal court may not issue a declaratory judgment unless there exists an actual case or controversy. *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998). In a diversity action, the Court must apply the substantive law of the forum state, as interpreted by the state's highest court. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Because the Policy was delivered in Louisiana, the Court interprets the Policy applying Louisiana substantive law.[5] *See Thermo Terratech v. GDC Enviro-Solutions, Inc.*, 265 F.3d 329, 334 (5th Cir. 2001).

Under Louisiana law, an insurer's duty to defend is broader than its duty to indemnify. *See Elliott v. Cont'l Cas. Co.,* 949 So.2d 1247, 1250 (La. 2007) (citing *Steptore v. Masco Constr. Co., Inc.,* 643 So.2d 1213, 1218 (La. 1994)). Because the duty to

---

[5] Rec. Doc. No. 6-6 at 1.

defend does not depend on the outcome of the underlying law suit but rather upon the allegations in the pleadings, a duty to defend claim is ripe, and presents an actual case or controversy when the underlying suit is filed. *See e.g. W. Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 312-13 (5th Cir. 1993); *Elliott v. Cont'l Cas. Co.,* 949 So.2d 1247, 1250 (La. 2007) (citing *Steptore v. Masco Const. Co., Inc.,* 643 So.2d 1213, 1218 (La. 1994). Therefore, Tower National's duty to defend claim is ripe and is determined solely by comparing the pleadings against the insured with the insurance policy. *See Suire v. Lafayette City-Parish Consol. Gov't,* 907 So.2d 37, 52 (La. 2005).

Under Louisiana law, in general, an insurer's duty to indemnify cannot be determined until after the underlying suit has been resolved and the insured is found liable. *Allstate Insurance Co. v. Employers Liability Assurance Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971); *American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Cas. Insurance Co.*, 280 F.2d 453 (5th Cir. 1950); *see Quinlan v. Liberty Bank & Trust Co.*, 575 So. 2d 336, 348-49 (La. 1990); *Mossy Motors Inc. v. Cameras Am.*, 898 So.2d 602, 607 (La. App. 4 Cir. 2005). However, if "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify," the issue is properly addressed. *Northfield*

4

*Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529 (5th Cir. 2004)(applying Texas law). As this question of justiciability may turn on conclusions reached on the duty to defend claim, the Court leaves this narrow issue for resolution below.

### b. Discretion to Exercise Jurisdiction

The Court next addresses whether it should abstain from ruling on the duty to defend and indemnity claims. The parties differ on the abstention standard to be applied. Defendants move the Court to dismiss or stay pursuant to the doctrinal standard enunciated in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942). Plaintiff contends the proper (and more stringent) standard is that set forth in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The Court agrees with the latter.

The *Brillhart* standard applies to a court's determination on whether to dismiss a declaratory judgment action. *Orrix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). However, "it is well settled in this circuit, that a declaratory action that also seeks coercive relief is analyzed under the *Colorado River* standard." *New England Ins. Co. v. Barnett*, 561 F.3d 392, 397 (5th Cir. 2009). "[W]hen an action

contains any claim for coercive relief," including counterclaims, *Colorado River* applies. *Id*.[6]

Here, Plaintiff's complaint presents a declaratory judgment action. Defendants' answer claims that "the plaintiff has arbitrarily and capriciously failed to consider the aforementioned insurance policy endorsement which unambiguously extends coverage," and seeks "all applicable damages, attorney's fees...."[7] The inclusion of a request for coercive relief in the form of damages and attorney's fees "indisputably removes this suit from the ambit of a declaratory judgment action." *Id*. at 395 (quoting *Southwind Aviation, Inc. v. Bergen Aviation, Inc.,* 23 F.3d 948, 950 (5th Cir. 1994)(per curiam)). Thus, *Colorado River* abstention doctrine, rather than *Brillhart* abstention doctrine, governs the Court's abstention determination.

Under the *Colorado River* doctrine, "the district court's discretion to dismiss is 'narrowly circumscribed' and is governed by a broader 'exceptional circumstances standard." *Barnett*, 561 F.3d at 394-95. The doctrine applies when parallel state and federal proceedings exist. *See Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000).

---

[6] The U.S. Fifth Circuit Court of Appeals recognizes two exceptions to applicability of the *Colorado River* standard. The *Colorado River* standard is not applied if the claims for coercive relief are frivolous or if the claim for coercive relief were added as a means of defeating *Brillhart*. *Barnett*, 561 F.3d at 395-96. As the claims for coercive relief have been asserted by defendants, seeking to invoke *Brillhart*, these exceptions do not apply.

[7] Rec. Doc. No. 3 at 5.

For a court to abstain from exercising jurisdiction under the *Colorado River* doctrine, it first must find that the federal and state court actions are "parallel." *Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs., Inc*., 903 F.2d 352, 360 5th Cir. 1990). Actions are parallel when the same parties are litigating the same issues. *See Republicbank Dallas, Nat'l Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987). Tower argues that because the state court action does not encompass defendants' counterclaim asserted here, the two actions are not parallel.

The underlying state action is brought by Anzalone against Dixie Motors, Lala, State Farm, and Tower to compensate Anzalone for damages, including medical expenses and lost wages.[8] This declaratory judgment action is brought by Tower against Dixie Motors and Lala to determine whether Tower has a duty to defend or indemnify in connection with the underlying lawsuit.[9] Certainly, the declaratory judgment claim is a subset of the state court litigation; however, the two actions do not involve the exact same parties and issues, and are not parallel. *Republic Ins. Co. v. Housing Authority of New Orleans*, No. 08-4748, 2012 WL 5384661, at *6 (E.D. La. Nov. 1, 2012). The counterclaim in the instant declaratory judgment action presents

---

[8] Rec. Doc. No. 1 at 3.
[9] Rec. Doc. No. 1 at 2.

an additional insurance contract claim, and the action does not involve Anzalone or State Farm.

Even assuming perfect symmetry is not essential for abstention, the Court applies the *Colorado River* abstention factors to the federal and state actions in this matter, and concludes that abstention is not required in this case.

### i.  Assumption by Either Court of Jurisdiction Over a *Res*

Neither this Court nor the state court has assumed jurisdiction over any res or property in this case. The absence of this factor, weighs against abstention. *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999)(quoting *Colo. River*, 424 U.S. at 813).

### ii.  The Relative Inconvenience of the Forums

Both the federal and state proceedings are located in southeastern Louisiana. Therefore, neither forum is more or less convenient than the other. The absence of this factor weighs against abstention. *Id*.

### iii.  The Avoidance of Piecemeal Litigation

The overlap of issues between the federal and state court actions is duplicative. "The prevention of duplicative litigation is not a factor to be considered in an abstention

determination." *Evanston Ins. Co. v. Jimco, Inc*., 844 F.2d 1185, 1192 (5th Cir. 1988)(citing *Colo. River*, 424 U.S. at 817). "[D]uplicative litigation, wasteful though it may be, is a necessary cost of our nation's maintenance of two separate and distinct judicial systems possessed of frequently overlapping jurisdiction." *Black Sea Inv., Ltd. v. United Heritage Corp*., 204 F.3d 647, 650 (5th Cir. 2000).

The real concern here is the danger of inconsistent rulings with respect to a piece of property. *Id.* at 650-21. When, as here, no court has assumed jurisdiction over a disputed res, there is no such danger. This factor therefore weighs against abstention.

iv.   <u>The Order in Which Jurisdiction was Obtained by the Concurrent Forums</u>

The Supreme Court has stated that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 21 (1983). The state court action was filed on June 17, 2014. The federal court action was filed July 15, 2014.[10] According to Tower, "significant progress has been made in the federal court case, while hardly any progress has been made in

---

[10] Rec. Doc. No. 1 at 2.

Dr. Anzalone's personal injury state court case."[11] The "Underlying Lawsuit... does not have a trial date, discovery is still ongoing...."[12] Tower correctly notes that jury trial in this matter is set for July 13, 2015, and that this matter could be resolved on its pending motion for summary judgment. The Court concludes that as the federal court action is further along, this factor weighs against abstention.

> v.  <u>Whether and to What Extent Federal Law Provides the Rules of Decision on the Merits</u>

Both actions are governed by state tort and insurance law. However, the fact that no federal law issue exists here does not, alone, weigh in favor of abstention. *Evanston Ins. Co.*, 844 F.2d at 1193 (citing *Colo. River*, 424 U.S. at 817). The "task is to ascertain whether there exist 'exceptional circumstances,' the 'clearest of justifications,' that can suffice under Colorado River to justify the surrender of that jurisdiction." *Moses H. Cone*, 460 U.S. at 26. As the cases pose basic insurance questions, and plaintiffs have made no showing of any exceptional circumstances that call for abstention in this matter. Therefore, this factor is at most neutral. *See Black Sea*, 204 F.3d at 651.

---

[11] Rec. Doc. No. 13 at 9.
[12] Rec. Doc. No. 13 at 9.

vi.    The Adequacy of the State Proceedings in Protecting the Rights of the Party Invoking Federal Jurisdiction

This factor "can only be a neutral factor or one that weighs against, not for, abstention." *Evanston*, 844 F.2d at 1193. Both actions are governed by state insurance law. As such, this factor is neutral.

vii.    Summary of Colorado River Factors

Four factors clearly weigh against abstention, while two are neutral. No factor supports staying the federal court action. The Court finds a stay unwarranted in this case and addresses the motion for summary judgment.

c. **Whether Tower National is Entitled to Summary Judgment that it Owes no Duty to Defend Dixie Motors and/or its Employee in the Underlying Personal Injury Lawsuit**

Under Federal Rule of Civil Procedure 56(c), the Court will grant a party's motion for summary judgment if:[13]

> the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

---

[13] Although the parties do not raise or address the issue of whether Anzalone is a required party under Fed. R. Civ. P. 19, the Court addresses it here. Anzalone has no reasonable interest in whether Tower National owes a duty of defense to Dixie Motors and Lala under the Policy. But even if it did, it is inconceivable how disposing of this declaratory judgment action could leave any of the parties with a "substantial risk" of incurring inconsistent obligations. *See U.S. Fire Ins. Co. v. A-Port, LLC*, Civ. Action No. 14-441, 2015 WL 1416490, at *2 (E.D. La. Mar. 26, 2015).

A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Louisiana has adopted the "Eight Corners Rule": the insurer's duty to defend suits against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. *See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009); *American Home Assur. Co. v. Czarniecki*, 230 So.2d 253, 259 (La. 1970). In determining the duty to defend, the court should liberally construe and accept as true the allegations of the petition. *See id*.

The Court has authority to grant declaratory relief in this diversity action.[14] In this diversity action contemplating a Louisiana insurance policy, the Court must apply Louisiana substantive law, as interpreted by the state's highest court.

---

[14] The Court's authority to grant declaratory relief on the duty-to-defend claim turns on whether subject matter jurisdiction is proper. Subject matter jurisdiction is premised on diversity of citizenship. Under 28 U.S.C. § 1332(a), jurisdiction is proper where (1) the parties are completely diverse, and (2) the amount in controversy exceeds $75,000. Here, Tower National is a corporation in a corporation incorporated in the State of New York, with a principal place of business in New York, New York. Defendant, Dixie Motors' member Lala, is a citizen of Louisiana. Accordingly Dixie Motors is a citizen of Louisiana. Lala is the only other Defendant. The parties are completely diverse. It is undisputed that potential liability exceeds $75,000 in this case. Diversity jurisdiction is satisfied.

The Louisiana Supreme Court has provided the following summary of the rules governing the interpretation of insurance policies:

> Interpretation of an insurance policy usually involves a legal question which can be resolved properly in the framework of a motion for summary judgment. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.
>
> An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Unless a policy conflicts with statutory provisions or public policy, it may limit an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes.
>
> If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. Under this rule of **strict construction**, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle, however, is subject to exceptions. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.

*Huggins v. Gerry Lane Enters., Inc.*, 957 So.2d 127, 129 (La. 2007)(quoting *Bonin v. Westport Ins. Corp.*, 930 So.2d 906, 910-11 (La. 2006))(emphasis added).

On liability coverage, the Policy provides:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and **resulting from "garage operations"** other than the ownership, maintenance of covered "autos."[15] (Hereinafter referred to as "other than covered autos" provisions).

The following are "insureds" for "garage operations" other than covered "autos":

> (1)  You (Dixie Motors)
> (2)  Your partners (if you are a partnership), members (if you are a limited liability company), "employees", directors or shareholders **but only while acting within the scope of their duties.**[16]

On the right and duty to defend, the Policy provides:

> "[w]e have the right and duty to defend any insured against a suit asking for these damages. However we have no duty to defendant against a suit seeking damages for bodily injury or property damage to which this insurance does not apply....[17]

The policy applies to "bodily injury" and "property damage" only if:

> (1)  The accident occurs in the coverage territory[18]

The coverage territory is:

> (1)  The United States of America

---

[15] Rec. Doc. No. 6-6 at 16, Policy, *Garage Coverage Form, Section II Liability Coverage*.

[16] Rec. Doc. No. 6-6 at 17, Policy, Garage Coverage *Form, 3. Who is An Insured*.

[17] Rec. Doc. No. 6-6 at 15 Policy, *Garage Coverage Form, Liability Coverage*.  "Our duty to defend or settle ends when the applicable Liability Coverage Limit of Insurance – "Garage Operations" – Other Than Covered Autos has been exhausted by payment of judgments or settlements."

[18] *Id.*

(2)   The territories and possessions of the United
      States of America;
(3)   Puerto Rico;
(4)   Canada; and,
(5)   Anywhere in the world if:

    a.  A covered "auto" of the private passenger type
    is leased, hired, rented or borrowed without a
    driver for a period of 30 days or less.[19]
    b. The "insured's" responsibility to pay damages
    is determined in a "suit" on the merits, in the
    United States of America, the territories and
    possessions of the United States of America,
    Puerto Rico or Canada or in a settlement we
    agree to.[20]

The facts surrounding the incident are undisputed. Also,

Defendants appear to concede that the vehicle at issue in this

case may not constitute a 'covered auto'; however, invoke the

aforementioned "other than covered autos" provision, along with

a 2013 Endorsement which forms part of the Policy and expands

the coverage territory as follows:

We also cover **bodily injury**, property damage or
personal and advertising injury **that occurs**
during the policy period shown in the
Declarations **within the coverage territory**.

For purposes of this endorsement, **the coverage
territory is extended to anywhere in the world
if**:

1. The **bodily injury**, property damage or
   personal and advertising injury is **caused by
   an insured who permanently lives within the
   coverage territory while the insured is
   temporarily outside of one of those places**;

The original suit for damages resulting from such
bodily injury, property damage or personal and

---

[19] *Id*. at 28, *Coverage Territory* (emphasis added).
[20] *Id*.

advertising injury must be brought within the coverage territory.[21]

In sum, Tower National's duty to defend can exist where the following relevant circumstances are present:

1. In an original suit brought against an insured within the coverage territory for damages resulting from bodily injury;

2. Caused by an insured in an accident resulting from "garage operations" *other than covered autos*; and, which

3. Occurred anywhere in the world if the bodily injury is caused by an insured who permanently lives within the coverage territory while the insured is temporarily outside of the coverage territory.

At issue in this case is Item 2: whether Anzalone's injury **resulted** from Dixie Motors' **"garage operations."** "'Garage operations'" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations."[22] Also, "[g]arage

---

[21] Rec. Doc. No 6-6 at 45, Section VII(A), Garage Policy Extension Endorsement. Item 2 omitted.
[22] Rec. Doc. No. 6-6 at 29, Policy, Section VI, Definitions: H.

operations" includes all operations <u>necessary</u> or <u>incidental</u> to a <u>garage business</u>.[23]

Defendants contend that the allegations trigger the duty to defend because it is claimed in the underlying lawsuit that Lala was leading a company-sponsored trip along with other Dixie executives and their business guests at the time of the accident, triggering coverage under "operations necessary or incidental to a garage business."[24] The characterization of the trip as a company sponsored trip is not entirely accurate. First, the company executives <u>decided</u> to take their *annual* (income) bonus in the form of the sailing trip for six of the participants.[25] This is underscored by the fact that because the bonuses could not cover all eight, the Barones, the only "business guest" participants, participated at their own expense.[26] A portion of the trip, including the cost of the sail boat, airfare, and golf cart rental were advanced by the company; however, a portion of these payments were to be listed

---

[23] *Id*. (emphasis added).
[24] Rec. Doc. No. 14 at 14.
[25] Rec. Doc. No. 6-5 at 8-22, *Lala Deposition*; Rec. Doc. No. 14 at 4. "Dixie Motors would issue a bonus to Lala and [Stephen] Guidry as an executive 'perq' based on their performance. Lala and Guidry decided to take the bonus in the form of a sailing trip to the Bahamas with Lala's girlfriend, Yvonne King, and Guidry's wife, Ashley…Lala explained that as owner of Dixie motors he was entitled to a larger bonus than Guidry, which he exercised in the form of an all-expense paid trip for the Anzalones. The Barones were not part of the bonus, but were invited along at their own expense as loyal customers and good friends."
[26] *Id*.

17

as account receivables from Lala.[27] The Anzalones were treated at no cost in the form of a birthday gift from Lala.

The foregoing is consistent with Lala's claim that the trip was "partially business and partially personal"[28]; however, this assertion does not go to the heart of the issue: whether the golf cart accident resulted from "garage operations" or operations necessary or incidental to Dixie Motors' garage business in recreational vehicle sales and service operations.

In *Travelers Indem. Co. v. Nix*, the Fifth Circuit interpreted a similar garage operations policy to determine whether coverage existed for bodily injury arising out of a shooting on the garage premises. 644 F.2d 1130 (5th Cir. Unit B May 1981). The Fifth Circuit found that the policy only provided coverage for liability arising out of the conduct of the business, or incidental to the business. The court further found that the liability of the owner of the store, if any, arose out of a purely personal altercation which was unrelated to the operation of the business. The Fifth Circuit held that since the policy did not provide coverage for personal liability arising from personal matters, coverage did not exist. *Id.* at 1132; *see also American States Ins. Co. v. Estate of Neighbors*, No.

---

[27] The airfare was only covered by Dixie Motors when issues arose with regard to the participants' commercial flights.
[28] Rec. Doc. No. 6-5 at 10, *Lala Deposition.*

3:94CV179-B-A, 1995 WL 1945530, at *2 (N.D. Miss. Dec. 27, 1995)("Since McCrory's use of his automobile at the time of the accident was not intended to benefit Quick Tune, the court finds that the American States policy did not provide coverage for the claim.....").

In *Renda v. Brown,* the court there held that no coverage existed under a garage operations policy. La. Ct. App. 563 So.2d 328 (1990). The policy provided that there would be coverage for "an occurrence arising out of garage operations". *Id.* at 333. The vehicle at issue was a truck used primarily by the owner's son for personal reasons and occasionally in the owner's business. On the night in question, the son was using the truck with permission but for a personal errand. A fatal accident occurred. The court assumed the truck was principally used in garage operations but held coverage did not exist because its use at the time of the accident was purely personal. *Id*.

Here, the circumstances, according to LaLa himself, support a similar conclusion:

> Lala and Anzalone dropped their ladies at the dock, and went to look for the others because they did not know where to return the golf cart. While Lala was driving with Anzalone as a passenger in the golf cart, the left front tire struck a large pothole on the

> pathway, which caused the golf cart to tip over, injuring Anzalone.[29]

It is not suggested that the only two passengers in the vehicle were engaged in Dixie Motors operations at the time of the accident. However, Defendants posit that an accident occurring during a personal excursion on a trip, partially intended to confer entertainment value to two of the eight participants, who happen to be business customers, but who were not present at the time of the accident, is sufficient to show that the accident resulted from operations incidental to a garage business. "Such a rule, however, would strain the plain and ordinary meaning of the language of the policy, bringing within its ambit activities that the parties did not, at the time of contracting, contemplate or intend to include." *American States v. Estate of Nabors*, 100 F.3d 953, at *1 (5th Cir. 1996)(citing *Travelers Indem. Co. v. Nix*, 644 F.2d 1130, 1132 (5th Cir. Unit B May 1981)). "It is quite apparent that the parties in contracting for this insurance policy did not contemplate anything other than what the policy plainly intends: coverage for liability arising out of the conduct of the business, or incidental to the business...the policy does not provide coverage for personal liability arising from personal matters and cannot be extended to provide coverage for such liability. *Travelers Indem. Co. v. Nix*, 644 F.2d at 1132.

---

[29] Rec. Doc. No. 14 at 6.

There is not a hint of use of the golf cart for garage operations or activities incidental to such operations. The underlying pleading alleges facts that fall outside the policy language. There is no ambiguity to be resolved against Tower National, and thus the Court concludes Plaintiff is entitled to summary judgment with respect to the duty to defend.

Finally, the Court addresses the unresolved issues relating to the indemnity claim. Unlike the duty to defend, the duty to indemnify "is triggered by the actual facts that establish liability in the underlying lawsuit." *Guar. Nat'l Ins. Co. v. Azrock Indus. Inc.*, 211 F.3d 239, 243 (5th Cir. 2000). Applying the same interpretation of the Policy set forth above in connection with Tower National's duty to defend, the Court concludes that on these undisputed facts, the policy unambiguously excludes coverage and Tower National has no duty to indemnify Dixie Motors and Lala. The duty of indemnity is sometimes addressed before the resolution of the underlying suit when the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify. *See Western Alliance Ins. Co. v. Northern Ins. Co. of New York*, 176 F.3d 825, 828 (5th Cir. 1999)("The duty to indemnify may be justiciable in a declaratory judgment action before determination of insured's underlying liability if the

complaint does not trigger duty to defend and no facts can be developed in the underlying suit that could trigger the duty to indemnify."); *Morad v. Aviz*, Civil Action No. 12-2190, 2013 WL 1403298, at *4 (E.D. La. April 5, 2013); *see also Fireman's Fund Ins. Co. v. Sneed's Shipbuilding, Inc.*, 803 F. Supp. 2d 530, 543-44 (E.D. La. Mar. 22, 2011)(Fallon, J.); *Liberty Mut. Ins. Co. v. Jotun Paints, Inc.*, 555 F. Supp. 2d 686, 710-11 (E.D. La. April 2, 2008)("the Court finds that the declaratory judgment claims regarding Liberty's duty to indemnify are appropriate for determination, despite the pending state court lawsuits."); *Gabarick v. Laurin Maritime (America), Inc.*, Civil Action Nos. 08-4007, 08—4156, 2009 WL 43096, at *8 (E.D. La. Jan. 7, 2009)(Africk, J.). In light of the conclusions reached on the duty to defend claim, and exercising its discretion, the Court finds that summary judgment on the question of the duty to indemnify is also appropriate.

## II.   <u>CONCLUSION</u>

Accordingly, and for the reasons enumerated above,

**IT IS ORDERED** that the Motion to Dismiss and/or Stay Complaint for Declaratory Judgment (Rec. Doc. No. 8) is **DENIED. IT IS FURTHER ORDERED** that the Motion for Summary Judgment (Rec. Doc. No. 6) is **GRANTED** and judgment be entered for the Tower National on the issues of policy coverage. Success on the issue

of coverage is a predicate to any claim for bad faith. As the Court has determined Tower National owes neither a duty to defend, nor a duty to indemnify Defendants in the underlying lawsuit, Defendant's counterclaim is hereby **DISMISSED with prejudice.**[30]

New Orleans, Louisiana, this 20th day of May, 2015.

_____
UNITED STATES DISTRICT JUDGE

---

[30] Under Louisiana law governing payment of insurance claims, the phrase "arbitrary and capricious" regarding an insurer's refusal to pay a claim means vexatious or unjustified, without reasonable or probable cause or excuse; an insurer does not act arbitrarily and capriciously when it withholds payment based on a genuine good faith dispute about the amount of a loss or the applicability of coverage. La. Rev. Stat. Ann. § 22:1892(A)(1), (B)(1) (2012).